**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARINA JIMENEZ GARCIA**,<br><br>    Plaintiff,<br><br>    v.<br><br>**POLLY KAISER, ET AL.**,<br><br>    Defendants. | Case No.: 4:25-cv-06916-YGR<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Petitioner in this action is an asylum seeker from Guatemala who was arrested following a routine hearing on Friday, August 15, 2025 at the immigration court located in San Francisco, California. That day, she filed a petition for a writ of habeas corpus as well as a motion for a Temporary Restraining Order ("TRO") which was granted by the duty judge for the Northern District of California two days later. Respondents were ordered to show cause why a preliminary injunction should not issue following the TRO's expiration during which time this action was assigned to the undersigned.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** petitioner's Motion for a Preliminary Injunction.

**I.   BACKGROUND**

The following facts appear undisputed unless noted otherwise:

Marina Jimenez Garcia is a Maya indigenous woman who entered the United States in November 2023. (Dkt. No. 1, Petition for Writ of Habeas Corpus ("Habeas Petition") ¶ 47; Dkt. No. 14-2, Form I-213, Record of Deportable/Inadmissible Alien, dated November 13, 2023 (Form I-213).) Department of Homeland Security ("DHS") Border Patrol encountered Garcia, who

"admitted that she had illegally crossed the international boundary on November 13, 2023 near Sasabe, Arizona without being inspected by an immigration officer at a designated port of entry." (Dkt. No. 14, Respondents' Opposition to Petitioner's Motion for Preliminary Injunction ("Oppo.") at 6.) Border Patrol then served petitioner:

> with a Notice to Appear (I-862) and [she was] Released on Own Recognizance (I-220A) for humanitarian reasons, and [was] placed in removal proceedings, per Section 212(a)(6)(A)(i) of the INA.

(Form I-213 at 3.) The Notice to Appear instructed petitioner to appear before an immigration judge in San Francisco on February 14, 2025. (Dkt. No. 14-3.)[1] Though not provided in the record to the Court, the Court takes judicial notice of the fact that Form I-220A, explicitly referenced in the Form I-213, states that the release was subject to 8 U.S.C. Section 1226.[2] *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Petitioner subsequently lived in Oakland, California, applied for asylum, and attended her first appearance as required on February 14, 2025. (Dkt. No. 5, Memorandum of Points and

---

[1] The government does not dispute the factual allegations in the petition which provide:

> In granting her release without requiring that she pay bond or wear an ankle monitor, DHS determined that she posed little if any risk of flight or danger to the community.
>
> When DHS released her, they gave her regular check-ins at the local ICE office. Petitioner appeared at every ICE check-in as instructed. . . .
>
> Ever since Petitioner entered the country, she has fully complied with court and supervision requirements. She diligently attended all court hearings and ICE check-ins. She has no criminal history.

(Habeas Petition ¶¶ 49-50, 52.)

[2] *See* https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf ("In accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following condition . . . ."). *See also Calderon v. Kaiser*, 2025 WL 2430609, at *1 (N.D. Cal. Aug. 21, 2025) (Martinez-Olguín, J.) (stating that petitioner "was issued a Form I-220A, Order of Release on Recognizance, that stated she was being placed in removal proceedings and, under section 236 of the Immigration and Nationality Act (codified at 8 U.S.C. § 1226) . . . .").

2

1  Authorities in support of Petitioner's Ex Parte Motion for Temporary Restraining Order ("TRO
2  App") at 8.)

3        Petitioner was subsequently instructed to appear in immigration court on August 15, 2025
4  for a routine hearing. At the August 15, 2025 hearing, respondents "requested dismissal of
5  [petitioner's] immigration court proceedings with the intent of . . . processing [p]etitioner for
6  expedited removal." (*Id*.) The immigration judge did not rule on respondent's request—and
7  continued the proceedings—because the court was unable to locate an appropriate interpreter.

8        Upon exiting the hearing, agents for United States Immigration and Customs Enforcement
9  ("ICE") detained petitioner. Petitioner alleges the agents "did not present warrants for arrest, nor
10 did they provide any explanation for why she was being arrested." (*Id*.) Respondents state that the
11 agents "identified themselves as immigration officers to Petitioner, confirmed her identity, and took
12 her into custody pursuant to a Warrant of Arrest (Form I-200) under 8 U.S.C. § 1226(a)." (Oppo. at
13 7.) Counsel for petitioner filed suit the same day.

14       On August 17, petitioner secured a TRO ordering her release from ICE detention, and she
15 remains out of custody pursuant thereto. That TRO enjoined and restrained respondents "from re-
16 detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker,
17 and from removing her from the United States." (Dkt. No. 6 at 6.) The TRO further required
18 respondents to show cause why a preliminary injunction should not issue. (*Id*.)

19       On August 22, respondents filed their brief opposing a preliminary injunction, to which
20 petitioner replied on August 25. The habeas petition sought an order enjoining respondents "from
21 transferring Petitioner outside this District or deporting Petitioner pending these proceedings" and
22 "from re-detaining Petitioner unless [her] re-detention is ordered at a custody hearing before a
23 neutral arbiter in which the government bears the burden of proving, by clear and convincing
24 evidence, that Petitioner is a flight risk or danger to the community." (Habeas Petition at 14-15.)

25       This is one of many similar such occurrences and actions in this district. Given the relief
26 requested, and the parties' understanding thereof, the Court construes the original TRO application
27 as a motion for a preliminary injunction.
28

## II. LEGAL STANDARD

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To secure a preliminary injunction, a plaintiff "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter*, 555 U.S. at 20.) Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor" if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This is the Ninth Circuit's "sliding scale" approach, in which "the elements of a preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. In all cases, at an "irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimental v. Dreyfus,* 670 F.3d 1096, 1105–06 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)).

## III. ANALYSIS OF *WINTER* FACTORS

### A. Likelihood of Success re Habeas Petition

#### 1. Intended Detention Without Hearing

As always, the most important factor in a request for preliminary injunction is a petitioner's likelihood of success on the merits. Petitioner argues the government's actions to detain her physically would violate both substantive and procedural due process.

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is axiomatic that freedom from physical imprisonment or restraint "lies at the heart of the liberty that the Clause protects." *See Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). It is further well-established that the

4

Clause's protections extend to non-citizens in the United States regardless of their immigration status. *See id.* at 693; *Trump v. J. G. G.,* 145 S. Ct. 1003, 1006 (2025).

The Court's analysis begins with the threshold issue of whether petitioner has any protectible liberty interest in avoiding re-detention. The arguments presented rest on each party's assertion regarding the applicable section of the Act relevant to her detention given her status in this country. The government contends petitioner is deemed "an applicant for admission" to the United States and is subject to "expedited removal proceedings" under 8 U.S.C. § 1225(b)(1). Petitioner argues that when she entered this country, the government detained and released her pursuant to 8 U.S.C. §1226, not 8 U.S.C. § 1225. She argues that Section 1226 affords her due process rights and the government's attempt to strip her of those due process rights and detain (and potentially deport) her under Section 1225(b)(1) is unconstitutional.

The Court turns to the text of the relevant statutory provisions here: Section 1226(a) (petitioner's view) and Sections 1225(b)(1) and 1225(b)(2) (government's view).

***Section 1226(a)*** authorizes the Attorney General to issue a warrant and detain an "alien" already present in the United States. Section 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).[3] As both parties note, pursuant to

---

[3] The Court notes at the outset that under Section 1226(e):

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

However, the Supreme Court has explained that this provision does not divest district courts of their traditional habeas jurisdiction or "bar constitutional challenge." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). The Ninth Circuit has further reiterated this point in several analogous cases. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (finding that section 1226(e) does not preclude judicial review of "any error of law . . . including any claimed due process violation."); *Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022) (holding that federal courts have habeas jurisdiction over "questions of law or constitutional questions" but not "an immigration court's determination that a noncitizen is a danger to the community"); *Singh v. Holder*, 638 F.3d 1196, 1207 n.6 (9th Cir. 2011) (finding claims that the discretionary process itself was constitutionally flawed were cognizable in federal court on habeas review).

Section 1226, immigration officers are authorized to release noncitizen(s) if the person(s) demonstrate that they "would not pose a danger to property or persons" and are "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

***Section 1225***, by contrast, applies to those deemed to be "applicants for admission" to the United States.[4] With respect to this group, Section 1225 further categorizes the applicants in two distinct ways. The Supreme Court has explained:

> [A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1)[5] and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. . . . Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here).
>
> . . . Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. . . . Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).[6]

*Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018) (some internal cites omitted).

---

[4] "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).

[5] "If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible [due to fraud, misrepresentation, or lack of valid documentation], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

[6] ". . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

6

1   While respondents cannot dispute that petitioner was released upon a finding that she was
2   neither a danger to the community nor a flight risk, they argue instead that ICE's earlier decision
3   notwithstanding, it can unilaterally reclassify her as "detained" pursuant to Section 1225(b)(2)
4   while her full removal proceedings are still pending.

5   This argument has been repeatedly rejected in recent weeks in the context of cases with
6   highly similar fact patterns.[7]

- *Ramirez Clavijo v. Kaiser*, No. 5:25-cv-06248, 2025 WL 2419263, at *4 (N.D. Cal. Aug, 21, 2025) (Freeman, J.) ("Unlike *Thuraissigiam*, here, Petitioner was placed in full removal proceedings and DHS affirmatively released Petitioner under the discretionary framework pursuant to § 1226(a). . . . Thus, because the Government decided to proceed with Petitioner's immigration case under § 1226(a) and released Petitioner on her own recognizance Petitioner has a protected liberty interest, and the Due Process Clause protects her from unlawful detention.")

- *Pinchi v. Noem*, No. 5:25-cv-05632, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (Pitts, J.) ("Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

- *Calderon v. Kaiser*, No. 5:25-cv-06695, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025) (Martinez-Olguín, J.) ("Attempting to circumvent this caselaw, the

---

[7] Perhaps this is why respondents' contention that petitioner lacks a liberty interest beyond those enumerated in Section 1225 "even where, as here, the government cites 8 U.S.C. § 1226(a) in connection with its release or re-arrest of a noncitizen subject" is followed not by any citation to supporting case law, but to one cite stating precisely the opposite. In fact, the entire paragraph in respondents' brief contains only one other citation, to *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), a case in which the petitioner was apprehended at the border, never released from detention, and placed from the very beginning in expedited removal proceedings. That *Thuraissigiam* bears little resemblance factually to Garcia's case should be obvious. *See Ramirez Clavijo*, 2025 WL 2419263, at *4 (finding the same).

7

Government instead argues that Ortiz Calderon has no liberty interest because she is a "noncitizen subject to expedited removal" due to her presence in the United States without having been either admitted or paroled, or physically present in the United States continuously for two years . . . . The Government contends that, consequently, any future detention of Ortiz Calderon would be mandatory under 8 U.S.C. § 1225(b)(1) or § 1225(b)(2). But Ortiz Calderon remains in removal proceedings pursuant to 8 U.S.C. § 1229a. Though the Government could have placed Ortiz Calderon in expedited removal proceedings when she was initially detained, it did not. The Government's position that Ortiz Calderon was both released under § 1226(a) yet remains "subject to" § 1225(b) both defies logic and is unsupported by law.").

- *Guillermo M. R. v. Kaiser*, No. 25-CV-05436, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (Lin, J.) ("It is well-established that the liberty interest that arises upon release is '*inherent* in the Due Process Clause." (quoting *Pruitt v. Heimgartner*, 620 F. App'x. 653, 657 (10th Cir. 2015) (emphasis in original)).

- *Ortega v. Kaiser*, No. 25-cv-05259, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (Tigar, J.) (noting that "numerous courts" "find that persons in Ortega's circumstances have a protectable liberty interest in remaining out of custody on bond pending further immigration proceedings.").

- *Alva v. Kaiser*, No. 5:25-cv-06676, at 6 (N.D. Cal. 2025) (Lin, J.): ("Thus, even when ICE has the initial discretion to detain or release noncitizens, after those individuals are released from custody, they have a protected liberty interest in remaining out of custody.")a

This Court agrees with the other jurists referenced and the uncontroverted authority that has repeatedly been cited to the government. The Court rejects respondents' invitation to jettison long-standing due process principles and instead holds that petitioner has a protectable liberty interest she is entitled to defend.

8

This Court, as others, will not ignore the record evidence demonstrating *respondent's own choice* to pursue proceedings under Section 1226. To do so, and thereby sanction the government's actions, would effectively authorize an impermissible *post hoc* rationalization for the government's attempt to detain petitioner. *See Ramirez Clavijo*, 2025 WL 2419263, at *4 ("Accordingly, the Court cannot credit Respondents' argument that § 1225(b) can serve as a new basis for Petitioner's detention, which Respondents raised post hoc and introduced for the first time in this litigation.").

Accordingly, the Court finds that the government cannot now proceed under Section 1225, but must maintain its course under Section 1226 which provides protected liberty interests.

Having found a protectable interest, the Court applies the factors found in *Mathews v. Eldridge* to analyze petitioner's claim.[8] There, the Supreme Court held that:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

With respect to the first (private interest), Garcia has shown a substantial "interest in remaining in her home, . . . obtaining necessary medical care, [and] maintaining her relationships in the community . . . ." *Pinchi*, 20205 WL 2084921, at *4; *see also* TRO App. at 14 and 17 (noting Garcia's medical condition and that she lives with her daughter and brother in law).

With respect to the second, the Court finds Garcia is at a high risk of the erroneous deprivation of these interests. The government has shown obvious disregard for the liberty and statutory interests of Garcia and those similarly situated. "Where an individual has not received a bond or redetermination hearing, 'the risk of an erroneous deprivation [of liberty] is high.'"

---

[8] Respondents argue that neither the Supreme Court nor the Ninth Circuit has relied on *Mathews* in the immigration context and therefore it should not apply here. (*See* Oppo. at 9.) This, too, is an argument squarely rejected by several other courts in this district in recent weeks. *See Pinchi v. Noem*, 2025 WL 2084921, at *3 n.2; *Calderon*, 2025 WL 2430609, at *3; *Ramirez Clavijo*, 2025 WL 2419263, at *5.

*Calderon*, 2025 WL 2430609, at *3 (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025).)

With respect to the third, respondents assert a "compelling interest in the steady enforcement of its immigration laws." (Oppo. at 14.) Sweeps of persons who are exiting courtrooms and complying with the requirements that the government itself imposed for the orderly disposition of claims is not compelling[9], especially where the government itself has already determined that the person poses no threat to the community, is not a flight risk, and has not committed any crimes. *See also, Pinchi*, 2025 WL 2084921, at *5 (finding no countervailing government interest where it did "not claim that any material circumstances have changed that would warrant reassessment of Ms. Garro Pinchi's risk of flight or dangerousness, and [where] it has articulated no other reason for her detention.").

As such, the Court finds petitioner likely to succeed on the merits of her claim that she is entitled to a hearing before a neutral arbiter in accordance with due process protections prior to re-detention[10] and hereby issues an injunction to that effect.

### 2. Out-of-district transfer

Respondents contend that the petitioner cannot obtain an injunction prohibiting her transfer out of the district. The argument rests on an assertion that the place of detention lies within the sole discretion of the Attorney General and is not subject to judicial review under Section 1231(g).

The government does not persuade. Section 1231(g) provides that the Attorney General "shall arrange for appropriate *places of detention* for aliens detained pending removal or a decision of removal." 8 U.S.C. § 1231(g) (emphasis supplied). The government cannot transfer the petitioner without first detaining her. Thus by definition, it would need to violate the injunction, which bars detention, to engage in such conduct.

---

[9] Petitioner suggests that the practice is motivated by the Administration's imposition of a daily quota of 3,000 ICE arrests. (*See* TRO App. at 7.)

[10] The original TRO application argued that petitioner's detention violated her substantive due process rights, which require her detention "be justified by a sufficient purpose." (TRO App. at 11.) Because the Court finds petitioner entitled to an injunction mandating a hearing before a neutral arbiter prior to any re-detention, it expresses no view on the substantive due process claim.

10

At stated above, the Court hereby imposes an injunction prohibiting the government from detaining petitioner pending a hearing before a neutral arbitrator. Therefore, the government cannot transfer the petitioner.[11]

### B. IRREPARABLE HARM

Regarding the second *Winter* factor, respondents' arguments as to the harm likely to befall petitioner absent an injunction largely mirror their arguments as to the merits. Essentially, respondents contend that "given her status as an applicant for admission under 8 U.S.C. § 1225, Petitioner cannot establish that her lawfully authorized mandatory detention would cause her irreparable harm." (Oppo. at 14.) As the Court rejects respondents' merits arguments, it similarly rejects these here.

The *Pinchi* court explained:

> "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up).

*Pinchi*, 2025 WL 2084921, at *6. *Hernandez* went even further, noting "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment) . . . [including] subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." 872 F.3d at 995. All of these issues apply to petitioner here.

Petitioner has met her burden as to this factor.

### C. Balance of the equities and the public interest

---

[11] For further grounds, *see also, Milan-Rodriguez v. Sessions,* 2018 WL 400317, at *8 (E.D. Cal. 2018) (finding a court retains the power to review claims that transfers violated petitioners' constitutional or statutory rights); *Ramirez Clavijo, supra,* 2025 WL 2419263, at *7 (noting that the statute conferring upon the Attorney General the discretion to determine the appropriate place of detention for aliens pending removal does not address transfers) and *Ozturk v. Hyde,* 136 F.4th 382, 396 (2d Cir. 2025) (finding the same).

11

Here, the last two *Winter* factors merge because the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Again, the government cites a weak showing as to these factors where petitioner, in its estimation, has failed to demonstrate a likelihood of success on the merits, and argues for its general interest in the enforcement of immigration law.

Once again, respondents' arguments fail to persuade. First, "[t]he public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process." *Hernandez*, 872 F.3d at 996. Second, having already determined that petitioner is neither a flight risk nor a public danger, respondents would at most suffer a small delay in detaining her.

The final *Winter* factors favor petitioner.

\*\*\*

For the reasons stated above, the Court finds petitioner has met all four *Winter* factors and is entitled to the issuance of a preliminary injunction.

### IV. CONCLUSION

Based on the above, **IT IS HEREBY ORDERED**, the Court **GRANTS** the Motion for a Preliminary Injunction and **ORDERS** as follows:

1. Respondents are **ENJOINED AND RESTRAINED** from re-detaining petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker where the government bears the burden of proving by clear and convincing evidence that changed circumstances render her a danger to the community or a flight risk, and that no conditions other than her detention would be sufficient to prevent such harms.

2. Respondents are **ENJOINED** from transferring Petitioner out of this district or deporting her pending these habeas proceedings.

3. The Court finds no need, nor has there been a request, for a bond.

4. This Preliminary Injunction **SHALL REMAIN** in force throughout the pendency of this action unless earlier modified by the Court.

The parties shall meet and confer with respect to a case schedule. The parties shall file a joint statement by no later than September 8, 2025.

12

**IT IS SO ORDERED.**

Date: August 29, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**